

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00193-CV

## IN THE MATTER OF C.A.P., JR., A JUVENILE

**From the 443rd District Court
Ellis County, Texas
Trial Court No. 18-J-5005**

## O P I N I O N

C.A.P. appeals from a juvenile court order waiving its jurisdiction and transferring him to district court to be tried as an adult for six second and third degree felony offenses: two counts of aggravated assault with a deadly weapon, two counts of deadly conduct, terroristic threat placing public in fear of serious bodily injury, and possession of a firearm at a place weapons are prohibited. TEX. FAM. CODE ANN. § 54.02 (West 2014). C.A.P. complains that the juvenile court's order waiving its jurisdiction was deficient because it did not adequately set forth the factual reasons for its decision and that the evidence was legally and factually insufficient to support the juvenile court's decision. Because we find no reversible error, we affirm the judgment of the juvenile court.

As relevant to the facts of this case and pursuant to Family Code Section 54.02, a juvenile court may waive its exclusive original jurisdiction and transfer a child to adult criminal court if it finds that the child was alleged to have committed a second or third degree felony; he was fifteen years old or older at the time he allegedly committed the offenses; after a full investigation and a hearing, the Court determines there was probable cause to believe the child committed the offenses; and the welfare of the community requires criminal proceedings because of the seriousness of the offenses and/or the child's background. *See* TEX. FAM. CODE ANN. § 54.02(a)(1)-(3) (West 2014).

In making the determinations required in subsection (a) that "because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings," the juvenile court shall consider, among other matters: (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person; (2) the sophistication and maturity of the child; (3) the record and previous history of the child; and (4) the prospects of adequate protection of the public and the likelihood of rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court. TEX. FAM. CODE ANN. § 54.02(f). The juvenile court must consider all four factors under Section 54.02(f), but it need not find that all four factors favor transfer when exercising its discretion to waive jurisdiction. *Moon v. State*, 451 S.W.3d 28,

41 (Tex. Crim. App. 2014).[1]  The four factors are not the exclusive factors to consider but nevertheless are factors that must be considered.

If the juvenile court waives jurisdiction, it "shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court."  TEX. FAM. CODE ANN. § 54.02(h); *Moon*, 451 S.W.3d at 38.  This means that the order must specify which facts the juvenile court relied upon in making its decision that the seriousness of the offense or the background of the child, or both, required criminal proceedings to protect the welfare of the community.  *See Moon*, 451 S.W.3d at 47, 49.

**ADEQUACY OF FINDINGS OF FACT TO SUPPORT REASONS FOR WAIVER IN WRITTEN ORDER**

In his first issue, C.A.P. complains that the juvenile court's findings contained in its order waiving jurisdiction were not adequately specific pursuant to Section 54.02(h).  A juvenile court is required to "state specifically" facts which support its reasons for waiver of jurisdiction in the order waiving jurisdiction.  *See Moon*, 451 S.W.3d at 41; *see also* TEX. FAM. CODE ANN. § 54.02(h).  The juvenile court's order also must show that the juvenile court considered at least the four factors identified in Section 54.02(f) but the

---

[1] We note that the Court of Criminal Appeals' decision in *Moon v. State*, which is considered to be the seminal case in juvenile waiver proceedings, was based on an appeal from a conviction pursuant to Article 44.47 of the Code of Criminal Procedure.  In 2015, the Legislature repealed article 44.47 and added Family Code Section 56.01(c)(1)(A) to allow an appeal directly from the order waiving jurisdiction.  *See* Acts 2015, 84th Leg., ch. 74 (S.B. 888), §3, eff. Sept. 1, 2015.  Because of this change, an appeal of our decision will no longer be considered by the Court of Criminal Appeals but by the Texas Supreme Court, which has jurisdiction over juvenile appeals.  The Texas Supreme Court has not addressed the method of analysis and review as explained in *Moon*, therefore, our analysis will follow the established precedent of the Court of Criminal Appeals.

court "need make no particular findings of fact with respect to those factors." *Id*. at 41-42.

In its discussion of the specificity requirement, the *Moon* court explained,

> [T]he Legislature has required that, in order to justify the broad discretion invested in the juvenile court, that court should take pains to "show its work," as it were, by spreading its deliberative process on the record, thereby providing a sure-footed and definite basis from which an appellate court can determine that its decision was in fact appropriately guided by the statutory criteria, principled, and reasonable[.]

*Id*. at 49.

The portions in the juvenile court's order that are directly relevant to the four factors expressly identified in Section 54.02(f) are:

> After careful consideration of the evidence, the Court further finds:
>
> ***
>
> 3.  C.A.P. was sixteen (16) years of age at the time of the alleged offenses (on or about January 22, 2018).
>
> ***
>
> 10.  The Court finds that these alleged offenses were committed against persons.
>
> ***
>
> 12.  The Court considered the sophistication and maturity of the Respondent and finds that the Respondent is sufficiently sophisticated and mature under the Family Code to warrant discretionary waiver of the juvenile court's jurisdiction and transfer to the criminal district court.
>
> 13.  The Court considered the record and previous history of the Respondent. The history of the Respondent contains items, events, and circumstances which supports the positions of each party. The nature and circumstances surrounding these allegations and the events leading up to

these events indicate an increasing disregard for the law and members of this community.

14. The Court considered the prospects of adequate protection of the public and the likelihood of rehabilitation of the Respondent by use of procedures, services, and facilities currently available to the juvenile court. The Court finds that the procedures, services, and facilities currently available to the juvenile court will not likely rehabilitate the Respondent. Under current legislation, the Texas Juvenile Justice Department may not hold a person beyond their 19th birthday. The Court has no control over programs, lengths of stay, conditions of stay or release conditions for youth sentenced to the Texas Juvenile Justice Department. Rehabilitation will likely require more time than that available in the juvenile justice system. Justice requires that a broader spectrum of services, supervision and/or programs be made available for these allegations and the alleged perpetrator than is available under the Juvenile Justice Code. The needs of the community, including its safety and welfare, may require greater power and authority than available to the juvenile court.

Elsewhere in the order, the juvenile court also found that probable cause existed to support each of the six offenses, which as set forth in the order included C.A.P. causing bodily injury to M.J. by shooting her with a firearm, shooting a firearm at C.C., threatening to commit aggravated assault with a deadly weapon with the intent to place the public or a substantial group of the public in fear of serious bodily injury, and bringing a firearm to a high school unlawfully.

Ultimately, although it was contained in the section of the order with the findings of fact, the trial court set forth its "reasons" for waiver of jurisdiction:

The Court has considered the seriousness of the offenses, the fact that the offenses were committed against persons, and the background of the Respondent. *Because of the seriousness of the offenses and the background of the Respondent, the welfare of the community requires that criminal proceedings*

*proceed in criminal court concerning the aforementioned felony offenses and all criminal conduct occurring in said criminal episodes.* [emphasis added].

In *Moon*, the Court of Criminal Appeals determined that the juvenile court's order waiving jurisdiction was deficient because it lacked sufficient specificity to support the transfer in that the only reason stated for waiver—seriousness of the offense—was not supported by "case-specific findings of fact." *Moon*, 451 S.W.3d at 50-51. The *Moon* court observed that the juvenile court had found facts "that would have been relevant to support transfer for the alternative reason that the appellant's background was such as to render waiver of juvenile jurisdiction," however, "because the juvenile court did not cite the appellant's background as a reason for his transfer in its written order, these findings of fact [were] superfluous." *Id*.

The transfer order in the instant cases does not suffer from the same defect. Here, the juvenile court's order expressly identify both Section 54.02(a)(3) reasons—(1) seriousness of the offenses and (2) C.A.P.'s background—to support its conclusion that the welfare of the community required transfer for criminal proceedings. *See* TEX. FAM. CODE ANN. § 54.02(a)(3), (h); *cf. Moon*, 451 S.W.3d at 51. The order also makes case-specific findings of fact to support the two stated reasons warranting waiver and transfer and also reflects that the juvenile court considered the four factors set forth in Section 54.02(f). *See Moon*, 451 S.W.3d at 41-42. We find that the order's findings were adequate to support the order. We overrule issue one.

**SUFFICIENCY OF THE EVIDENCE REGARDING THE FINDINGS OF FACT**

In his second issue, C.A.P. complains that the juvenile court abused its discretion by entering the order waiving its jurisdiction and transferring the proceeding to district court because the evidence was legally insufficient to support the juvenile court's findings of fact. In his third issue, C.A.P. complains that the juvenile court abused its discretion by entering the order waiving its jurisdiction and transferring the proceeding to district court because the evidence was factually insufficient to support the juvenile court's findings of fact. We will address these issues together.

In *Moon v. State*, the Court of Criminal Appeals established the standard of review in transfer proceedings as follows:

> [I]n evaluating a juvenile court's decision to waive its jurisdiction, an appellate court should first review the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under "traditional sufficiency of the evidence review." But it should then review the juvenile court's ultimate waiver decision under an abuse of discretion standard. That is to say, in deciding whether the juvenile court erred to conclude that the seriousness of the offense alleged and/or the background of the juvenile called for criminal proceedings for the welfare of the community, the appellate court should simply ask, in light of its own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. In other words, was its transfer decision essentially arbitrary, given the evidence upon which it was based, or did it represent a reasonably principled application of the legislative criteria? And, of course, reviewing courts should bear in mind that not every Section 54.02(f) factor must weigh in favor of transfer to justify the juvenile court's discretionary decision to waive its jurisdiction.

*Moon v. State*, 451 S.W.3d 28, 44-45 (Tex. Crim. App. 2014).

In our review of the juvenile court's specific findings of fact regarding the Section 54.02(f) factors under the "traditional sufficiency of the evidence review," we follow the well-established standards for legal and factual sufficiency of the evidence. *Moon*, 451 S.W.3d at 47. Under a legal sufficiency challenge, we credit evidence favorable to the challenged finding and disregard contrary evidence unless a reasonable fact finder could not reject the evidence. *Moon v. State*, 410 S.W.3d 366, 371 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, *Moon*, 451 S.W.3d 28. If there is more than a scintilla of evidence to support the finding, the challenge fails. *Id*. Under a factual sufficiency challenge, we consider all of the evidence presented to determine if the court's finding is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *Id*. We limit our legal and factual sufficiency review to the facts that the juvenile court expressly relied upon that are explicitly set out in the transfer order under Section 54.02(h). *Moon*, 451 S.W.3d at 50.

Second, after completing our sufficiency review, we consider the juvenile court's reasons for its ultimate waiver decision regarding the seriousness of the offense and the background of the juvenile under an abuse of discretion standard. *Id.* at 47. In doing so, we ask, in light of our own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. *Id*.

SECTION 54.02(F) FACTORS

*Alleged offense against person or property*

As to the first factor in Section 54.02(f), there is no dispute that the offenses were committed primarily against two persons, M.J. and C.C.[2] M.J. was C.A.P.'s former girlfriend. C.C. was M.J.'s current boyfriend. The evidence presented at the hearing showed that C.A.P. stole a firearm from his father's residence several days prior to the offense which he brought to the high school cafeteria in Italy where he confronted M.J. and then shot her, hitting her twice. C.A.P. also fired at C.C.'s head but did not hit him. There were many other students and teachers in the cafeteria when the shooting took place.

*Sophistication and maturity*

As to the second factor in Section 54.02(f), the juvenile court found that C.A.P. was sufficiently sophisticated and mature to warrant transfer. C.A.P. tested fairly high for intelligence and was found to be of average sophistication and maturity for a juvenile his age. The doctor who performed the testing found that he was more emotionally mature than what was typical of his age but less autonomous. The only evidence to the contrary was given by a family friend and C.A.P.'s father who testified that he was immature and more like a 12- to 14-year-old than a 16-year-old. The doctor further testified that the fact

---

[2] We note that the last offense relating to the possession of a firearm at the school is not an offense against persons; however, C.A.P. has not challenged this finding regarding this particular offense and it does not affect our ultimate holding in this proceeding.

that C.A.P. planned the offense for several days by fabricating a reason to get his mother to take him to his father's house to steal the firearm several days before the shooting, storing the gun in his desk at home, bringing it to school in his backpack, going into the cafeteria to ensure that M.J. was there, then going into the bathroom to cock the gun to get it ready to fire and to put it in his pocket before returning to the cafeteria to shoot M.J. demonstrated a lack of impulsivity. One of C.A.P.'s teachers familiar with C.A.P.'s history relating to anger management issues testified that C.A.P. "is probably the most capable student he has ever seen in identifying his triggers, self-initiating, removing himself from class and using the tools that they gave."

*Record and previous history*

As to the third factor in Section 54.02(f) regarding the record and previous history of C.A.P., the record demonstrated that C.A.P. did not have a record with the juvenile department but did have a significant history of behavioral problems, angry outbursts, and violent behavior at school and home including stabbing a relative's family dog to death, assaulting other students, and killing birds in violent ways without remorse. C.A.P. also had been treated by different mental health providers for several years prior to the offenses, including inpatient treatment and ongoing therapy. C.A.P.'s family had attempted to seek treatment for him but was not consistent due to being discharged. There was evidence that C.A.P. had been discharged because he was manipulative and knew how to say and do the right things to get discharged from treatment.

*Prospects of adequate protection of the public and likelihood of rehabilitation by the juvenile court*

As to the fourth factor in Section 54.02(f) regarding the prospects for the adequate protection of the public and the likelihood of rehabilitation by the juvenile system, the juvenile court found that the services currently available from the juvenile court would be unlikely to rehabilitate him. Additionally, the juvenile court found that due to C.A.P.'s age, the juvenile system would be unlikely to rehabilitate him before his 19th birthday. There was testimony from the doctor that evaluated C.A.P. regarding potential treatment for purposes of rehabilitation at the Giddings facility of the Texas Juvenile Justice Department (TJJD) but it was unknown whether C.A.P. would be placed there if he remained in the juvenile system. The doctor opined that at least eighteen months to two years of treatment would be necessary for any potential rehabilitation through TJJD, depending on C.A.P.'s willingness to comply with treatment. The juvenile court found that it had no control over placement, which was undisputed. The doctor testified that if C.A.P. were compliant with treatment in a structured environment that rehabilitation might be possible. C.A.P. had demonstrated success in structured environments at school and while in detention prior to the transfer hearing.

ANALYSIS

Our review of the record demonstrates that the evidence was legally and factually sufficient to support the juvenile court's specific findings of fact contained in its order waiving jurisdiction relating to each of the Section 54.02(f) factors. C.A.P.'s second and

third issues contend that the trial court abused its discretion in granting the order waiving jurisdiction solely because the evidence was legally and factually insufficient as to the Section 54.02(f) factors. Because we have found that the evidence was legally and factually sufficient as to those factors, C.A.P.'s second and third issues are without merit. But even if C.A.P.'s issues could be extended to otherwise complain about the court's exercise of its discretion in granting the waiver of jurisdiction, when we review the findings of fact in relation to the juvenile court's ultimate reasons for its determination that the seriousness of the offenses which involved a premeditated shooting in a crowded high school cafeteria, and the background of C.A.P. which included a history of troubling and increasingly violent behavior, require that the proceedings be transferred to district court, we find that the juvenile court did not abuse its discretion. We overrule issues two and three.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the juvenile court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed October 31, 2018
[CV06]

